**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

**AMANDA SNIDER,**

**Plaintiff,**

**v.**

**PREMIUM RESOLUTION SERVICES, LLC,**

**Defendant.**

**Case No. 20-cv-487-JFH-SH**

## ORDER AND OPINION

This matter is before the Court on the Motion for Default Judgment ("Motion for Default") [Dkt. No. 16] and Motion for Attorney Fees ("Motion for Fees") [Dkt. No. 17] filed by Plaintiff Amanda Snider ("Snider"). For the reasons set forth below, the Motion for Default [Dkt. No. 16] and Motion for Fees [Dkt. No. 17] are GRANTED.

## BACKGROUND

Snider filed her Complaint against Premium Resolution Services, LLC ("PRS") on September 28, 2020, asserting claims for violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. and the Oklahoma Consumer Protection Act ("OCPA"), 15 O.S. §§ 751, *et seq*. PRS was properly served with the Complaint and Summons on August 26, 2021. Dkt. No. 12. PRS did not file an answer or otherwise respond to Snider's Complaint. On September 17, 2021, upon Snider's motion, a Clerk's Entry of Default was filed. Dkt. No. 14. Snider then filed its Motion for Default Judgment on November 24, 2021. Dkt. No. 16. Again, PRS did not respond. Snider filed her Motion for Attorney Fees [Dkt. No. 17] and Bill of Costs [Dkt. No. 18] on December 14, 2021. To date, PRS has not filed an answer or otherwise responded in this matter.

## LEGAL STANDARD

"[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted). A party is not entitled to default judgment as a matter of right; rather the entry of a default judgment is "committed to the sound discretion of the district court." *Tripodi v. Welch*, 810 F.3d 761, 764 (10th Cir. 2016) (internal citations omitted). Before granting a motion for default judgment, the court must: (1) determine it has subject matter jurisdiction and personal jurisdiction over the parties, and (2) determine whether well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986); *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

## DISCUSSION

### A. Subject Matter Jurisdiction

Prior to entering default judgment, the court "has an affirmative duty to look into its jurisdiction both over the subject matter and the parties." *Williams*, 802 F.2d at 1202-03. Default judgment should not be entered without first determining that the court has jurisdiction. *Dennis Garberg & Assocs., Inc. v. Pack-Tech Intern. Corp.*, 115 F.3d 767, 771-72 (10th Cir. 1997).

Pursuant to 15 U.S.C. § 1692k(d), this Court has original subject matter jurisdiction of actions brought under 15 U.S.C. §§ 1692 *et seq*. "without regard to the amount in controversy." Therefore, the Court has original subject matter jurisdiction over Snider's claim for violation of

the FDCPA brought under 15 U.S.C. §§ 1692, *et seq*. Additionally, the Court has supplemental subject matter jurisdiction over Snider's claim for violation of the OCPA brought under 15 O.S. §§ 751, *et seq*. as this claim is so related to Snider's FDCPA claim that the claims form part of the same case or controversy. 28 U.S.C. § 1367(a).

**B. Personal Jurisdiction**

If personal jurisdiction is evaluated by the district court based only on the complaint and affidavits, "a prima facie showing of personal jurisdiction" is sufficient. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The undisputed facts show that PRS is a business entity engaged in the collection of debt within Oklahoma. Dkt. No. 2 at ¶ 12. The undisputed facts further show that PRS, through its agents, employees, and/or representatives, purposefully directed its debt collection actions toward Snider in Oklahoma. *See id.* at ¶ 6. PRS' actions in Oklahoma are what give rise to the present action. *Id.; see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-76 (1985). Therefore, the Court has personal jurisdiction over PRS.

**C. Admitted and Undisputed Facts**

Upon an entry of default, the Court takes all the well-pleaded facts in a complaint as true. *See Tripodi*, 810 F.3d at 765 (noting that after default is entered, "a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts.") (internal quotation marks and citation omitted); *U.S. v. Craighead*, 176 Fed. Appx. 922, 924 (10th Cir. 2006) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (unpublished) (internal quotation marks and citation omitted). Here, the following facts alleged in Snider's Complaint are deemed admitted by virtue of PRS' failure to answer or otherwise file a responsive pleading.

PRS is a debt collector as the term is defined under the FDCPA. Dkt. No. 2 at ¶¶ 9, 14-18. Beginning in April 2020, PRS began placing collection calls to Snider's cell phone to collect consumer debt allegedly owed by Snider on an Advance Cash account. *Id*. at ¶ 21. Around this time, PRS also began sending text messages to Snider's cell phone to collect the alleged debt. *Id*. at 22. One such text message read as follows:

> ATTENTION: DUE TO THE COVID-19 VIRUS ALL SCHEDULING FOR COURT SUMMONS HAVE BEEN POSTPONED UNTIL MAY 15TH, 2020. PLEASE CONTACT THE FIRM HANDLING YOUR CASE TO RESOLVE THIS MATTER BEFORE YOUR [sic] SERVED. ONCE YOU DO GET SERVED THE FIRM WILL LOSE ALL LEGAL RIGHTS TO SPEAK WITH YOU. PLEASE CONTACT THEM DIRECTLY AT 855-235-8201 TO RESOLVE THIS MATTER VOLUNTARILY. THANK YOU

*Id*. at ¶ 23 (the "Text Message").

The Text Message failed to disclose that it was sent by PRS in an attempt to collect a debt and failed to disclose that any information obtained from Snider would be used for debt collection purposes. Dkt. No. 2 at ¶ 24. The Text Message contained false or misleading representations that a lawsuit had been filed. *Id*. at ¶ 23, 26. The Text Message contained false or misleading representations that a law firm was handling the collections matter. *Id*. at ¶ 23. The Text Message did not state the amount of debt owed or the name of the creditor to whom the alleged debt was owed. *Id*.

On April 21, 2020, Snider called the telephone number provided in the Text Message (the "Phone Call"). Dkt. No. 2 at ¶¶ 27, 28. The telephone number belonged to PRS. *Id*. The individual who answered the phone at PRS stated that Snider had reached the "Law Offices of Premium Resolution Services" and made references to "paralegals." *Id*. at ¶ 29. When Snider disputed the alleged debt, the individual stated that a lawsuit would be filed against her. *Id*.

PRS was not a law firm and did not employ any attorneys. Dkt. No. 2 at ¶¶ 30-31. To date, PRS has not filed any lawsuit against Snider and, in fact, never intended to file such a lawsuit. *Id*. at ¶¶ 32-33. Rather, PRS' actions were intended to deceive, mislead, or coerce Snider into payment of the alleged debt. *Id*. at ¶ 34.

**D. Violation of the FDCPA**

To prevail on a claim under the FDCPA, a plaintiff must prove (1) the plaintiff is a consumer; (2) the defendant is a debt collector; and (3) the debt collector's effort to collect a debt from a consumer violated some provision of the FDCPA. *Maynard v. Cannon*, 401 F. App'x 389, 393 (10th Cir. 2010). Under the FDCPA, a "consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692(a)(3). The undisputed facts demonstrate that Snider is a consumer. Dkt. No. 2 at ¶ 7. Under the FDCPA, a "debt collector" is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." *Id*. at ¶ 1692a(6). The undisputed facts demonstrate that PRS is a debt collector. Dkt. No. 2 at ¶ 9.

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. It is a violation of the FDCPA to engage in the following conduct:

> The false representation of— the . . . legal status of any debt . . . .
>
> The false representation that any individual is an attorney or that any communication is from an attorney.
>
> The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

> The failure to disclose in the initial written communication with the consumer . . . that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose.
>
> The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

15 U.S.C. § 1692e(2)(A), (3), (5), (10), (11), and (14). Additionally, a debt collector is required to provide certain information to the consumer in attempting to collect a debt:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, if disputed, the debt collector will obtain verification of the debt or a copy of the judgment against the consumer . . . ; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Id*. § 1692g(a). "Violation of these standards subjects debt collectors to civil liability . . . ." *Johnson v. Riddle*, 305 F.3d 1107, 1117 (10th Cir. 2002).

First, PRS violated the FDCPA by falsely representing the legal status of the alleged debt. *See* 15 U.S.C. § 1692e(2)(A). In the Text Message, PRS stated that "scheduling for court summons" had been postponed and that Snider should contact PRS before she was "served," thereby indicating that a lawsuit had been filed, but the summons had not yet been issued or served. Dkt. No. 2 at ¶ 23. However, at the time the Text Message was sent, and still today, no lawsuit has been filed. *Id*. at ¶ 32.

Next, PRS created the false representation that it was a law firm and made threats to file a lawsuit that it did not intend to file. *See* 15 U.S.C. § 1692e(3), (5). During the Phone Call, the PRS representative stated that Snider had reached the "Law Offices of Premium Resolution Services" and made references to paralegals. Dkt. No. 2 at ¶ 29. PRS was not, in fact, a law firm

and the collections matter was not being handled by an attorney. *Id*. at ¶¶ 30-31. During the Phone Call, the PRS representative threatened to file a lawsuit because Snider disputed the debt. *Id*. at ¶ 29. To date, PRS has not filed a lawsuit against Snider. *Id*. at ¶ 32. Further, by identifying itself as the "Law Offices of Premium Resolution Services," PRS also used a business name other than its true name in violation of the FDCPA. *See* 15 U.S.C. § 1692e(14).

Finally, PRS failed to make certain required disclosures and violated mandatory standards for attempting to collect a debt under the FDCPA. *See* 15 U.S.C. §§ 1692e(11), 1692g(a). Specifically, the Text Message failed to disclose that PRS was a debt collector and was attempting to collect a debt. Dkt. No. 2 at ¶ 23. In fact, PRS did not identify itself at all in the Text Message. *Id*. The Text Message failed to state the amount of the alleged debt and the name of the creditor to whom the debt was allegedly owed. *Id*. The Text Message also failed to include disclaimers that any that information obtained in correspondence with Snider would be used for debt collection purposes, that Snider could request verification of the alleged debt, and that Snider could request the name and address of the alleged original creditor. *Id*.

PRS used false representation and deception as means to collect an alleged debt from Snider. *See* 15 U.S.C. § 1692e(10). PRS' actions were in violation of the FDCPA and, therefore, PRS is subject to civil liability. *Id*. § 1692k.

**E. Violation of the OCPA**

To recover under the OCPA, a consumer must show: "(1) that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753; (2) that the challenged practice occurred in the course of defendant's business; (3) that the plaintiff, as a consumer, suffered an injury in fact; and (4) that the challenged practice caused the plaintiff's injury." *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000). An unlawful practice includes "a misrepresentation, omission or other practice

that has deceived or could reasonably be expected to deceive or mislead a person to the detriment of that person. Such a practice may occur before, during or after a consumer transaction is entered into and may be written or oral." 15 O.S. §§ 752(13); 753(20).

PRS used misrepresentation and deception as means to collect an alleged debt from Snider. Dkt No. 2 at ¶¶ 23-34. PRS' actions were taken in the course of its debt collections business. *Id.* at ¶ 14-18. PRS' conduct caused Snider mental distress. *Id.* at ¶ 37. Snider also satisfies the elements for her claim for violation of the Oklahoma Consumer Protection Act, 15 O.S. §§ 751, *et seq.* [1]

**F. Damages**

Once the Court determines that the unchallenged allegations in the Complaint provide sufficient legal basis for entry of default judgment, the Court then must ascertain the amount of damages. *Hunt v Inter-Globe Energy, Inc*., 770 F.2d 145, 148 (10th Cir. 1985). Snider seeks an award of statutory damages under the FDCPA, plus her attorney fees and costs in pursuing this action. Dkt. No. 16 at ¶¶ 9, 10.

Under the FDCPA, a debt collector who is found to have violated the FDCPA is liable to the consumer "in an amount equal to the sum of—

> (1) any actual damage sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . and
>
> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court."

[1] Snider does not seek any damages under her claim for violation of the OCPA,15 O.S. §§ 751, *et seq*.

15 U.S.C. § 1692k(a). Snider does not seek actual damages but requests statutory damages in the amount of $1,000. The Court finds that this award of statutory damages falls within the permissible statutory range under 15 U.S.C. § 1692k(a) and is just.

**G. Attorney Fees and Costs**

The FDCPA provides an award of reasonable attorney fees and the costs of the action. 15 U.S.C. § 1692k(a)(3). Snider seeks an award of costs in the amount of $1,245.00, which consists of the civil filing fee and service of process costs. Dkt. No. 18. Snider seeks an award of her attorney fees in the amount of $4,966.50, which consists of 13.3 hours of work performed by her attorney and 3.5 hours of work performed by the paralegal in handling this matter. Dkt. No. 17. Upon review of the Motion for Fees, the Court finds that an award of Snider's reasonable attorney fees in the amount of $4,966.50 is just and appropriate here. Dkt. No. 17.

**THEREFORE, IT IS HEREBY ORDERED that JUDGMENT** is entered against Defendant Premium Resolution Services, LLC for violations of the Oklahoma Consumer Protection Act, 15 O.S. §§ 751, *et seq*., and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*, in the amount of $1,000.00, plus $4,966.50 for attorney fees, and $1,245.00 for costs.

Dated this 3rd day of June 2022.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE